Rodick *v.* Hinckley & al.

Rodick *vs.* Hinckley *&* al.

The owner of the minor part of a vessel having refused to consent to a proposed voyage, his share was appraised, and a bond given to him by the other owners, conditioned that at the end of the voyage, which was to the *West Indies* and back, they would restore him his share in the vessel, unimpaired, or, if she should be lost, would pay him the appraised value. Instead of returning her directly from the *West Indies*, they employed her several months in trade from thence to southern ports and back, and thence home. Hereupon it was held,—that the obligee might maintain an action on the bond for the detention of the vessel ; and that the rate for which she might have been chartered was a reasonable rule for the estimation of damages.

This was an action of debt on a bond dated *Sept.* 7, 1829, in the penal sum of six hundred dollars, conditioned thus : " Whereas the said *James Rodick*, being one eighth part owner of the brig *Trio*, did, on the first day of *September* instant, give due notice to the said *Hinckley* and *Thompson* that he declined loading his part of said brig, or being in any manner concerned in a voyage now about to be commenced with said brig, and demanded security for his share of said brig in case she was sent to sea : And whereas the said brig has this day been appraised at the value of three thousand one hundred dollars : Now if the said *Hinckley* and *Thompson* shall, at the end and termination of the voyage or adventure, now about to be commenced with said brig, to the *West Indies* and back to this port, restore to the said *Rodick* his share of said brig, in as good order and of like value as she was when she came from sea, on the last voyage, or, in case she should be lost, pay or cause to be paid to him the sum of three hundred and eighty seven dollars and fifty cents, the appraised value of his said one eighth part of said brig ; then," &c.

The defendants pleaded the general issue, and filed a brief state= ment of various matters of defence, pursuant to the statute.

At the trial, before the Chief Justice, it appeared that a few days after the date of the bond, the vessel sailed for the *West Indies* ;

thence she proceeded to *Savannah ;* thence to *New York ;* thence to the *West Indies* again ; and thence to *Portland,* where she arrived in the early part of *June,* 1830 ; and that had she returned directly from the *West Indies* to *Bath,* instead of proceeding to *Savannah,* she would have arrived by the beginning of *December,* according to the usual length of such voyages. It further appeared that after her return, the parties being together, *Thompson* asked *Rodick* what was the least sum he would take for his part of the brig ; to which he answered four hundred dollars ; which *Thompson* replied he would give. *Rodick* then said he would take that sum if the defendants would pay him forty dollars for the run of the vessel ; and would also pay two outstanding bills of about twenty dollars. The parties then separated. A few days afterwards, at the Custom house in *Portland, Rodick* executed a bill of sale of his eighth part of the brig to the defendants, taking their promissory note for four hundred dollars ; but nothing was then said about either of the above mentioned sums, or about giving up the bond now in suit. The defendants, however, had previously paid the two outstanding bills.

Upon this evidence the counsel for the defendants contended that the jury ought to be instructed to presume that the forty dollars were paid ; or, that the plaintiff waived the payment, and accepted the four hundred dollars and the discharge of the outstanding bills, in full satisfaction of the bond. They further contended that under the terms of the condition, the plaintiff was not entitled to recover for the detention and use of the brig, as charter or otherwise ; but that if he had any rights, he ought to pursue them in *assumpsit.*

But the Chief Justice instructed the jury that the condition of the bond was violated by sending the vessel to *Savannah* and *New York,* and thence back to the *West Indies,* instead of returning her directly to *Bath ;* and that for the damages thereby occasioned, the plaintiff had a good right to maintain this action. On the question of damages he instructed them that as there was evidence that, if she had been returned directly to *Bath,* she might have been chartered for at least a dollar per ton per month, they were at liberty to consider that, if they thought proper, as a safe rule of damages. He

further instructed them that if, from the evidence, they should be satisfied that the four hundred dollars and the discharge of the two outstanding bills were considered and accepted by the plaintiff in full satisfaction for damages and for the run of the vessel, then they should find for the defendants ; that on this point the evidence was before them ; and, as there was no proof of the payment of the forty dollars, and as the bond was not cancelled or given up, they would judge whether there was any settlement of damages, or waiver of the claim. The jury, under these instructions, found for the plaintiff ; and the defendants filed exceptions to the ruling and instructions of the Judge.

*Fessenden & Deblois* contended that the defendants were entitled only to the appraised value of the vessel, as the liquidated damages agreed by the parties, in case of a breach. After the condition was broken, the rights of the parties stood at common law, by which one part owner of a chattel, having possession, may use it at his pleasure, and without liability to account. The appraised value having been paid, the bond was satisfied. If the plaintiff would claim any thing more, his remedy should have been pursued in *assumpsit.* *Abbot on shipping,* 71 ; 4 *Burr.* 2229 ; 1 *H. Bl.* 332 ; *Fletcher v. Dyke,* 2 *D. & E.* 32 ; 2 *B. & P.* 346 ; *Perkins v. Lyman,* 11 *Mass.* 76 ; 2 *Pet. Adm.* 288.

*Mitchell,* for the plaintiff.

Mellen C. J. delivered the opinion of the Court.

The voyage about to be performed when the bond was executed is described in the condition as a voyage "to the *West Indies* and back to this port," that is, to *Bath.* The brig was appraised at the sum of $3100. By the terms of the condition the plaintiff's share of the brig was to be restored to him at the end and termination of the voyage ; or, in case she should be lost, the said *Hinckley* and *Thompson* were to pay him $387,50, being the appraised value of the plaintiff's share. If the brig should be restored, according to the condition, at the end of the voyage, then they were to pay the plaintiff such sum as would be equal to the reduction in value of his

share, occasioned by the voyage. The language of the condition is plain and must receive a reasonable construction. It does not follow that because the plaintiff was unwilling to be concerned in the voyage abovementioned, that therefore it would be no inconvenience to him to be deprived of the opportunity of employing his share after the termination of the voyage. Besides, by having given the bond, *Hinckley* and *Thompson* had acquired the control of the brig only during the specified voyage. It is contended that the condition presents a case of liquidated damages. This is true as to one alternative, viz. the loss of the brig ; but this event never happened ; as to any thing beyond this there was no liquidation. The brig, instead of being at *Bath* early in *December*, as she probably would have been had no new voyage been undertaken, was absent six months after that time, in the unauthorized employment of *Hinckley* and *Thompson*. This is clearly a violation of the condition, and is admitted to be. It is also equally clear that the damage sustained by the plaintiff, by being deprived of the use of his share of the brig during the six months, was the immediate and direct consequence of such violation ; and why should not such damage be recovered in this action ? And why is not the fair charter of the plaintiff's share of the brig during the six months of her absence as correct and reasonable a rule of damages in such case, as the allowance of six per cent. interest, by way of damages, when a sum of money is not paid when it becomes due ?

It is said that *Hinckley* and *Thompson* were tenants in common of the vessel with the plaintiff, and, as such, had a legal right to use the vessel as they did. This doctrine, if sanctioned, would at once render the jurisdiction of a court of admiralty in cases of this nature, little more than nominal. The design of the law in requiring a bond to secure the rights of a recusant owner would be easily evaded, if the other owner or owners, having given the bond and sent the vessel to sea, could employ her in their own service as long as they should please, instead of performing and terminating the specified voyage according to the condition of the bond. The principle of the maritime law, upon which the bond in question was required and given, is a salutary one ; and it is our duty to see that it is fair-

ly carried into execution by those who. avail themselves of its appli-. cation. In the case at bar the condition of the bond has been violated without any pretence of reason or apology ; and according to. our late statute, the jury have. assessed the damages. In view of this cause, we perceive no incorrectness in the construction of the condition, and the instructions given. to the jury.

*Judgment on the Verdict.*